(94 South. 820)

## ATLANTIC COAST LINE R. CO v. CARROLL. (4 Div. 918.)

(Supreme Court of Alabama. Oct. 26, 1922.)

**1. Process ⬳33—Summons not fatally defective because of failure to fix time for appearance and answer.**

Failure of a summons to fix the time for appearance and answer in conformity with the form prescribed by Code 1907, § 5299, does not render it subject to a motion to quash, as the law fixes the time within which defendant must appear.

**2. Electricity ⬳19(2)—Complaint in action for death from contact with electrically charged guy wire held good on demurrer.**

A count of a complaint, charging defendant's agents or servants with knowledge of the location and condition of an electrically charged guy wire, with which plaintiff's decedent came in contact, and the danger and probable consequences of contact between it and a lighting wire attached to the same pole, and with knowledge of, or negligent failure to discover, the location and uninsulated condition of the lighting wire, which was within close reach and easily observable, for several months, *held* good on demurrer.

**3. Pleading ⬳192(5)—Prolix complaint not subject to demurrer.**

Though a prolix complaint might be subject to a motion to strike, it is not subject to demurrer (Code 1907, § 5322).

**4. Appeal and error ⬳1040(7)—Pleas held bad on demurrer, not considered where pleader got full benefit by other pleas.**

Whether defendant's pleas held bad on demurrer were good need not be considered, where defendant got the full benefit of the defense invoked by pleas held good, especially where the latter required less proof.

**5. Evidence ⬳473—Question as to whether witness acted for one defendant held permissible, and answer that work was done for accommodation of another defendant not a conclusion.**

In an action against a city and a railroad company for the death of one coming in contact with an electrically charged guy wire attached to a pole, to which wires by which the railroad received current from the city were attached, a question to the superintendent of the city's electric light plant as to whether he acted for the city or on his own initiative in putting a light wire on the pole below the guy wire *held* permissible, and his answer that the work was done for the accommodation of the railroad not a forbidden conclusion or opinion, but the statement of a collective fact, the details of which could have been brought out on cross-examination.

**6. Appeal and error ⬳1058(2)—Sustaining objection to question subsequently answered favorably to questioner not reversible error.**

Error, if any, in sustaining an objection to a question subsequently answered in such manner that the party asking it got the full benefit of the evidence sought is not ground for reversal.

**7. Evidence ⬳472(4)—Question as to necessity of pedestrians doing anything to pole or guy wire to pass safely held improper, as invading jury's province.**

In an action for the death of a pedestrian coming in contact with an electrically charged guy wire, where a witness fully stated the conditions and surroundings and how deceased and his companions were traversing the street at the time, a question as to whether it was necessary for pedestrians to do anything to the wire or the pole to which it was attached in order to pass in safety was improper, as invading the province of the jury.

**8. Railroads ⬳21—Presentation and filing of claim held unnecessary.**

An averment of compliance with Code 1907, §§ 1191, 1275, as to presentation and filing of a claim against a city for personal injuries, is not necessary as to a railroad, sued as a joint tort-feasor, which could have been sued separately.

**9. Electricity ⬳19(10)—Whether defendant's agent knew of uninsulated condition of lighting wire or physical contact between it and guy wire held for jury.**

Evidence that a railroad company's lighting wire, by which it received electric current from a city, was worn and uninsulated for several weeks before the death of a pedestrian coming in contact with an electrically charged guy wire attached to the same pole, that the railroad's agent, who had charge and control of its premises, had the lighting wires installed, and could and did observe the uninsulated wire at a close point, and that the railroad paid for and used the wires, *held* sufficient to make a question for the jury as to whether any agent, charged with the duty of maintaining the lighting wires, knew of their condition or of physical contact between them and the guy wire.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Electricity** ⬳19(12)—**Whether decedent could have passed without removing loose post to which electrically charged guy wire was attached, and whether he voluntarily touched wire, held for jury.**

Whether one killed by coming in contact with an electrically charged guy wire while passing along the sidewalk could have safely traversed the street without shoving or removing a loose guy post to which the wire was attached, and whether he voluntarily took hold of the wire itself, *or accidentally touched or came in contact with it, held* for the jury.

**11. Appeal and error** ⬳880(2)—**Railroad sued as joint tort-feasor for death, for which it could have been sued separately, cannot complain of general charge in favor of codefendant.**

A railroad company, sued as a joint tort-feasor with a city and the superintendent of the latter's electric light plant for the death of one coming in contact with an electrically charged guy wire attached to a post to which lighting wires, installed by the railroad for the transmission of current to its depot, were also attached, cannot complain of a general charge in favor of the superintendent, as it *could have been sued jointly or separately,* and made liable for the entire judgment (Acts 1915, p. 605).

**12. Electricity** ⬳16(4)—**Railroad, stringing light wire on pole supported by guy wire and post owned and maintained by city, held obligated to exercise reasonable care to maintain both wires in safe condition.**

A railroad company, stringing an electric light wire on a post, to brace or protect which a guy wire and post owned by a city furnishing electric current to the railroad was maintained by the city for the joint benefit and protection of the wires of both, *held* obligated to exercise at least reasonable care to maintain the guy wire and post, as well as the light wire, in a safe *condition.*

Appeal from Circuit Court, Dale County; J. S. Williams, Judge.

Action by Yancy Carroll, as administratrix of the estate of Clifton Carroll, deceased, against the Atlantic Coast Line Railroad and others. From a judgment for plaintiff, the named defendant appeals. Affirmed.

Count 1 of the complaint, on which the case was tried, alleges, in substance, that Clifton Carroll, while passing along the sidewalk in the city of Ozark, came in contact with a guy wire which had become charged with electricity, and was killed; that the defendant city of Ozark was operating an electric light and power plant, of which defendant Dowling was superintendent, with wires strung along the streets on poles; that the defendant railroad company put up and owned the electric wires leading from its depot to the wires of the city and connecting therewith, and from which it receives its current; that the railroad's wires were attached to a tall pole near its depot; that there was also attached to this tall pole, below the point at which the charged wires were attached, a guy wire, leading from the tall pole to a shorter pole sunk in the ground.

It is averred that the defendant Atlantic Coast Line Railroad Company "was in duty bound to see that its wire was kept in proper condition for the receiving and conducting of the electric current from the city of Ozark's wires to its place of business"; that "the Atlantic Coast Line Railroad Company had dominion and control over its said wire"; that "it was the duty of the defendants severally and separately or of their agents acting for them * * * to keep said wire * * . * and said guy wire in proper condition for the safe conveyance of the electric current from the city's wires over said wire to said depot of the defendant, the Atlantic Coast Line Railroad Company, so that the general public, including plaintiff's intestate, might pass along the avenue and sidewalk in the said city of Ozark in safety."

It is alleged that the Atlantic Coast Line Railroad Company negligently permitted its wire on the taller pole to become loose and dangle, or to become attached at a lower point on said pole than the place at which it was originally attached, and to become uninsulated; that the short or guy post had rotted off at the ground, and was by some one moved to about the outer edge of the sidewalk, permitting the guy wire to become loose and dangling, and become in contact with the metal of the railroad company's wires; and that plaintiff's intestate, passing along said sidewalk, came in contact with the thus charged guy wire, and was killed.

The summons to the appellant read as follows:

"The State of Alabama, Dale County. Circuit Court. To Any Sheriff of the State of Alabama—Greeting:

"You are hereby commanded to summons the Atlantic Coast Line Railroad Company, a corporation, defendant, to answer, plead, or demur to the complaint, as amended, filed in the cause of Yancey Carroll, Administratrix of the Estate of Clifton Carroll, Deceased, Plaintiff, v. the City of Ozark, a Municipal Corporation, et al., Defendants; said amended complaint being filed on October 19, 1916, within the time required by law.

"Issued this the 16th day of July, 1917.
                              "B. P. Garner, Clerk."

B. C. Dowling, testifying as a witness, after stating that when the lighting wires into the depot were put up the second time they were put on the pole below the guy wire, and were put up under his direction, but without any direction or authority from the city of Ozark, was asked this question by the attorney for the City of Ozark:

"Did you act for the city of Ozark in putting that wire up, or did you act on your own private initiative?"

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Over objection of the defendant Atlantic Coast Line Railroad Company, the witness was permitted to answer:

"I did it just as an accommodation to the Atlantic Coast Line Railroad Company."

The appellant excepted to the following portion of the court's oral charge:

"So far as this guy post is concerned, if the guy wire was attached to the post in question, the post in question being used by the Atlantic Coast Line Railroad Company for its use and purpose, then the duty rested upon the Atlantic Coast Line Railroad Company to see that that guy post and guy wire was properly maintained and properly kept in such a way as not be dangerous to the public traveling at that point."

Exception being taken, the court stated:

"I said this: That if this jury is reasonably satisfied from this evidence that the Atlantic Coast Line Railroad Company used that post for its purposes and that if the guy wire was attached to it and became a part of it, then there is a joint duty on the part of the Atlantic Coast Line Railroad Company and the city of Ozark to properly maintain and keep that post."

To this the appellant excepted.

The court gave the general affirmative charge for defendant B. C. Dowling. The jury returned a verdict for the plaintiff against the city of Ozark and Atlantic Coast Line Railroad. There was judgment accordingly, from which Atlantic Coast Line Railroad Company prosecutes this appeal.

John R. Tyson and Arrington & Arrington, all of Montgomery, for appellant.

The summons was fatally defective, and motion to quash it should have been sustained. Code 1907, § 5299. The averment that proof of claim was filed with the city clerk was material to all the defendants, and, on failure to prove such averment, there could be no recovery. 177 Ala. 441, 59 South. 155; 177 Ala. 419, 59 South. 63; 195 Ala. 202, 70 South. 642; 177 Ala. 302, 58 South. 256; 51 Ala. 156. It was error to give the affirmative charge for defendant B. C. Dowling. 104 Ala. 611, 16 South. 620; 112 Ala. 588, 21 South. 352. Counsel argue other questions, but without citation of authorities.

J. J. Speight and Lee & Tompkins, all of Dothan, for appellee.

The summons was sufficient. 23 Ala. 684; 45 Ala. 286; 66 Ala. 472; 100 Ala. 545, 13 South. 665. Appellant cannot complain of the failure of appellee to file proof of claim with defendant city of Ozark. 51 Ala. 498; 93 Ala. 350, 9 South. 870; 94 Ala. 159, 10 South. 137; 120 Ala. 653, 25 South. 22; 178 Ala. 636, 59 South. 461.

ANDERSON, C. J. [1] The summons as served upon this appellant does not entirely conform to the form prescribed by section 5299 of the Code of 1907, as it does not direct the defendant "to appear at the next term of the circuit court, to be held for said county at the place of holding same." It does, however, direct the defendant to appear and answer the cause there described, and shows that it was pending in the Dale circuit court, and the failure to fix the time for appearance and answer did not render the summons subject to the appellant's motion to quash the same, as the law fixes the time within which the defendant must appear. Davis v. McCary and Dean, 100 Ala. 545, 13 South. 665.

[2, 3] Count 1 of the complaint, while quite verbose and prolix, was not subject to any of the grounds of demurrer interposed thereto and argued in brief of counsel. It, in effect, charges this appellant's agents or servants with a knowledge of the location and condition of the guy wire and of the danger of a probable contact with appellant's lighting wire and of the consequences that might probably arise therefrom. It also charges this appellant's agents or servants with a knowledge of the location of its lighting wire and of its uninsulated condition or of a negligent failure to discover this fact which existed for several months; the wire being within close reach and of easy observation. Jones v. Finch, 128 Ala. 217, 29 South. 182; McKay and Roache v. Sou. Bell Tel. Co., 111 Ala. 337, 19 South. 695, 31 L. R. A. 589, 56 Am. St. Rep. 59; Montgomery Light Co. v. Thombs, 204 Ala. 678, 87 South. 205. The fact that the complaint was prolix may have rendered it subject to a motion to strike, but not to a demurrer. Section 5322 of the Code of 1907.

[4] It is needless to determine whether or not pleas 7 and 8 were subject to the demurrer sustained to same for whether good pleas or not, a question we do not decide or intimate, the defendant got the full benefit of the defense thereby invoked by the pleas to which the demurrer was overruled. Special pleas 3 and 4 gave the defendant the full benefit of the defense sought by plea 7, and required less proof to establish same. And the same can be said as to plea 8, being covered by plea 5. We do not wish to be understood as holding that the pleas to which the demurrer was overruled are good pleas.

[5] The trial court cannot be reversed for not sustaining appellant's objection to the question to the witness Dowling as to whether or not he acted for the city of Ozark or whether he acted on his private initiative, or in not excluding the answer, that, "The work was done for the accommodation of the railroad." The question was permissible under the authority of Emerson v. Lowe Mfg. Co., 159 Ala. 350, 49 South. 69. Moreover, the answer that the work was done for the accommodation of the railroad was not a forbidden conclusion or opinion, but was the statement

of a collective fact, the details of which could have been brought out upon cross-examination.

[6] The question to the witness as to its being a permissible custom during his administration as superintendent to use the city's poles to string their wires, whether objectionable or not, was subsequently answered in the affirmative by said witness, and the appellant got the full benefit of the evidence thereby sought.

[7] The trial court committed no reversible error in not permitting the appellant to ask witness Cox:

"In order to pass that hole of water on the west side, was it necessary for pedestrians to do any thing to that pole or that wire in order to pass in safety?"

It invaded the province of the jury as the witness had fully stated the conditions and surroundings, and how the deceased and his companions were traversing the street at the time, and it was for the jury to determine whether or not the deceased could have passed in safety without doing anything to the pole or wire.

[8] It is true that the complaint avers a compliance with sections 1191 and 1275 of the Code as to the presentation and filing of the claim and the proof of which is a condition precedent to a recovery against the city. Benton v. City of Montgomery, 200 Ala. 97, 75 South. 473. These statutes, however, are for the sole benefit and protection of municipalities, and the averment of a compliance therewith was only essential and material in order to recover against the city of Ozark, and was not necessary as to this appellant railroad, which is sued as a joint tort-feasor, and which could have been sued without making the city a party.

[9] It is next insisted that this appellant was entitled to the general charge because the proof failed to show that any agent, charged with the duty of maintaining the electric lighting wires, knew of their uninsulated condition, or that they knew of the physical contact between these wires and the guy wire. There was proof that the appellant's lighting wire had become worn and uninsulated for several weeks before the accident, and that appellant's agent Mosely, who had charge and control of its premises, could and did at a close point observe the wire, and the jury could infer that he did or should have discovered the condition, and that he knew of the unstable condition and position of the guy wire and the loose post to which it was attached, and made no effort to have the lighting wire reinsulated or the guy wire refastened to the ground so as to prevent a contact between it and the appellant's lighting wire. Not only could the jury infer the authority of Mosely from his general charge and control of the premises to keep them safe, but there was evidence that he had the lighting wire installed, and there was a reasonable inference that his act was either authorized or subsequently ratified by the appellant in paying for and using the same.

[10] The appellant next insists that it was entitled to the general charge because of the undisputed proof of its special pleas, or some of them. We think that it was a question for the jury as to whether or not these pleas or any one of them were proven. It was a question for the jury as to whether or not deceased could have safely traversed the street at the time he came in contact with the post without shoving or removing same. Moreover, each of the pleas avers, in effect, that he voluntarily took hold of the wire, and some of the proof shows that he did not take hold of the wire, but merely grabbed or shoved the post, and may have accidentally touched or come in contact with the wire.

[11] Whether the trial court erroneously or not gave the general charge in favor of B. C. Dowling, one of the defendants, is a point as to which this appellant cannot complain, as it could have been sued jointly or separately, and could be made liable for the entire judgment. Acts 1915, page 605. The cases of Mayer v. Thompson, 104 Ala. 611, 16 South. 620, 28 L. R. A. 433, 53 Am. St. Rep. 88, and Luling v. Sheppard, 112 Ala. 588, 21 South. 352, cited in brief of counsel, merely hold that an agent who commits a tort for his principal cannot escape personal liability because acting for another who would be liable for his acts. They do not hold that the plaintiff could not recover against this appellant notwithstanding his failure to recover, through error or otherwise, against Dowling.

[12] The two exceptions to the oral charge are not of such merit as to operate as a reversal of this case. True, the city owned and maintained the guy wire and post, but it was for the purpose of bracing or protecting another post upon which appellant's wire was strung and was maintained for the joint benefit and protection of the wires of both, and while it may have been primarily the city's duty to keep and maintain the guy wire in a safe condition, the appellant was also a joint user and beneficiary in same, and was also obligated to exercise reasonable, or perhaps a high degree of care—electricity being a highly dangerous substance—to maintain its wires and supports for the conservation of human life and safety.

The judgment of the circuit court is affirmed.

Affirmed.

SAYRE, GARDNER, and MILLER, JJ., concur.